Good morning. I'd like to reserve three minutes of my time. Thank you. Mr. Hood was convicted of attempting to entice a person who he believed was a 17-year-old pageant contestant to have sex with him, a crime for which he was sentenced to just over 10 years in prison to be followed by a term of supervised release for life. The sole issue in this appeal is whether Mr. Hood was entrapped as a matter of law by a government agent who, by locating and manipulating his particular emotional vulnerability, persuaded him to commit a crime when otherwise he would have gone on his law-abiding way. In the precise procedural posture of this case, the question for this court is whether any rational juror could have concluded, beyond reasonable doubt, that Mr. Hood was ready and willing to commit this crime before he was approached by the government agent who deployed a subtle... It's misleading to say he was approached. I mean, he approached this young girl. Well, he did friend this young woman on Facebook. Did he talk to her repeatedly to try to get her into a conversation? I mean, I'm just quibbling with the idea that he was just going on his merry way until the police decided to try to get him to do something. Well, I understand the question. He did, in fact, go on his way once she blocked him from Facebook. And that conversation did not have any sexual connotations. And when she blocked him because she didn't want to text him separately, he didn't try to contact her, or there's no evidence at all that he did anything. Hard, because she blocked him. Right, but he could have. Her Facebook page was public. It was known. Many things about her were known. And in theory, he could have gone about, he could have taken that opportunity to find other ways to contact her. For example, he could have followed her on Instagram, which he did actually try to do later. But he didn't do that. When she blocked him, he did go on his law-abiding way. It was only when the government agent, Agent Evans, 12 days later, went back to him through Facebook, reopened the conversation, and offered to text him on a separate phone, that he then started to talk to her again. So at that point, I think it's fair to say that the government agent did approach him and initiated the conversation. And that conversation, from the very early part of the conversation, was clearly replete with Mr. Hood's emotional interest in having a conversation with her. And when he found out how old she was, he also made it clear that he was the kind of person who was willing to wait until she was 18 for anything other than conversation to happen. It was the agent who recognized and manipulated Mr. Hood's emotional vulnerability, and started to prey upon that. Well, of course, he also, in the conversations, stated several times that he was afraid of getting caught, or he wanted to make sure she wasn't, he wasn't being set up, and things like that. I mean, which certainly indicated he knew he was doing something wrong. And it was also the case that when there was an attempt to break off the relationship at one time, he bombarded her with entreaties not to do that, that he wanted to continue, and all this sort of thing. So, I mean, he wasn't that reluctant of a participant. Well, I'd like to answer your question in two parts. The first part is that it is a completely acceptable reason to not want to cross the line into criminal conduct, for that to be why you're reluctant to go further in the conversation. So the fact that his concern was that he might be being set up or that he might get caught, which might have caused him to be reluctant, that's a perfectly valid reason to be reluctant to commit a crime. In Jacobson, the Supreme Court specifically said that it is one of the reasons why we have crimes at all, is to protect the moral order, but that reluctance doesn't necessarily have to come from some innate sense of morality. It has to be because you don't want to get caught and you don't want to get prosecuted. That's why we have the criminal justice system. The question is not whether Mr. Hood sort of abstractedly would never have considered wanting to have sex with a 17-year-old. The question is whether he was reluctant to actually cross that line in the conversation with the agent during that time. Isn't that just a classic issue of fact, and that's why we have juries to decide what the facts are? And you make a good argument, well, it's not necessarily this or not necessarily this. I mean, isn't this just a classic issue of fact as to his predisposition? So entrapment, the question of predisposition, is in fact a classic question of fact. However, it is not always a question of fact. Not always. I mean, if the evidence is so overwhelming, no reasonable juror could rule otherwise. Well, Mr. Hood's position is that this is just that case. The government has not cited a single case in which all of the factors weigh in favor of Mr. Hood the way that they do here. It is true that the key factor, you know, first of all, I'd like to just sort of say, because I want to make sure I say it, is that each factor weighs in favor of Mr. Hood. The place, obviously, that there is some question, which in our position is not enough to go to the jury, is whether he exhibited reluctance that was overcome by government persuasion. And it's not just the amount of persuasion or sort of the radical nature of the persuasion. It's the fact that the government agent was able to, and in this case quickly, identify Mr. Hood's special vulnerability, his emotional interest in having a love relationship, and tap into that in a way that kept him coming back for more. When he, Judge Clay, when he kept coming back with his entreaties, it was because by that point he'd already been, he already felt that there was an emotional connection. The agent had already said things to him like, you're sweet, I like you, I love your words, I love your poetry, I have feelings. I'm interested, she indicated that she was interested in a relationship. And that is really what Mr. Hood was interested in. So by that time he had already gotten emotionally connected. And, you know, you may ask, you know, how could he have gotten that connected so quickly? I mean, that is definitely what the government argues, that their relationship was too short for there to be a real connection. You can't pursue a sexual relationship with a man just because you have an emotional connection. You can't do that. Well, I agree with you that that is a question that you can validly ask here, except for in this case there's suggestion that he was aware that she was 17, but that he was willing to wait until she was 18, which is not a plausible thing for someone to want to have a relationship. Well, if he was going to wait, why did he show up at that coffee shop to meet her? Well, by that time he'd already been entrapped, Judge Clay. So that was beyond, that was the point, he had already been entrapped by the agent. And, you know, the very first case that the Supreme Court recognized the entrapment defense, Sorrells v. United States in 1932, it recognized that entrapment can actually happen in a single conversation. If the government agent is skilled enough to tap into the particular vein of vulnerability of the defendant, then you can have entrapment. And in that case the government agent pretended to be from the same division of the military and had been a World War I veteran like the defendant. And all he had to do was tap into that vein of military camaraderie, and the defendant within an hour said, yes, I'll go get that half gallon of whiskey for you. And he was convicted of violating the prohibition laws. So it doesn't matter that it wasn't a long time. It was that the agent was skilled enough to recognize in the early conversation that Mr. Hood had an emotional vulnerability and was able to keep coming back to that and manipulate it so that he was willing to cross the line, when otherwise he would not have been. He had no criminal history whatsoever. He had never done anything of the sort. The government presented no evidence that he had done anything like this or even exhibited an interest in having sex with minors before he was approached by this agent. What do you say about the fact that the trial judge, over the government's objection, did in fact put the entrapment question before the jury? What that means is there was sufficient evidence for the jury to find, both that he was induced by the government and also that he had a lack of predisposition. So what the judge did was it sent it to the jury to begin with. However, even so, you can still find, this court can still find entrapment as a matter of law. In other words, the jury expressly considered whether he was entrapped and apparently obviously found that he wasn't. And the jury sat through the trial and heard all the evidence, and you would have us substitute our perspective on that issue for the jury who actually considered the evidence? Yes, Judge Clay, yes. Both the Supreme Court and this court has, I don't know if we'd say substitute the finding of the jury. The basic finding would be that the jury made a mistake, that there was a patently clear absence of predisposition, that no rational juror could find that Mr. Hood was predisposed to commit this crime. What about the government's evidence that he had a safe bookmark of junior young Miss Nudist pageant pics? I mean, that doesn't show that he's got an interest in young girls that are naked, and I assume for sexual interest, I don't know what else would be. But, I mean, that was evidence the government introduced as to his predisposition. It is true that he did have that bookmark saved, and I would say I would just go to the Supreme Court's decision in Jacobson, which is you can have predilections, you can have fantasies, and for all we know, those were 18- and 19-year-old teenagers in that bookmark. We don't know. But you can have fantasies about taking certain actions or even fantasies about looking at new teenagers. That doesn't mean you're going to try. It doesn't mean it, but doesn't that create an issue of fact, though, as to his predisposition when he's got this on his computer already? The government didn't put that on there. I mean, he had been going to this site, and, I mean, you said there was no evidence at all of predisposition. Well, there's something there. Well, that evidence is not sufficient for a jury to find beyond a reasonable doubt that he was predisposed, and I would, again, turn the court to the Supreme Court. That, with everything else. Well, in Jacobson, the Supreme Court found entrapment as a matter of law when the defendant also exhibited what you might describe as an interest in, I think, sex with young boys. I'm not remembering exactly what it was, but you can exhibit, you can have a fantastical interest in something, and that doesn't mean you're actually going to cross the line to commit the crime. And it is possible for the court to find entrapment as a matter of law, even with that kind of evidence. Having a bookmark of teenage nudist pageant is not criminal. It doesn't mean you're going to commit a crime, any more than. . . It may depend how young they are, I suppose. It doesn't say the age of the. . . Well, that actually leads me to another point I'd like to make that is partially in response to you, Judge Clay, which is this fictional minor was 17 years old. This fictional minor. . . She was fictional. The agent was pretending to be this minor. It really was a minor, right? And then the agent took over for her. Right, but the conversation he had in which he. . . Okay, I mean, there really is a 17-year-old here. Yes, but he. . . He contacted the 17-year-old, and then at a point the agent took over and started communicating on her behalf, right? Yes, he did contact her. And then she actually got back on the line later, too, didn't she? Yes, she was put back on the line. Okay, so there's not a fictional 17-year-old. There's a real 17-year-old. The real 17-year-old that he spoke with, there was nothing about that conversation that would suggest he was trying to have sex with that minor. It was when the agent was pretending to be her. So that's all I mean when I say fictional minor. I'm not saying there was no minor. I'm saying that the person with whom he was speaking was a character that the agent created to persuade Mr. Hood to cross that line. So I guess I'd like to just sort of end with pointing out that, again, I know the question about whether it's fictional, but this person that the agent was pretending to be was not a 14-year-old. It was a 17-year-old who was dangling the possibility of an actual emotional relationship with someone who clearly had an interest in a love relationship. So with that, I will stop. Thank you. May it please the Court, my name is Brian Samuelson and I represent the United States. Hood believed he was talking to a 17-year-old girl and he said, I love you and I want you. That's text 336. That text, I love you and I want you, was the culmination of previous messages and text messages about J.H.'s beauty, about boyfriends, about dating, about I have to be careful because you are 17. And in that context, the only plausible way to interpret his statement, I love you and I want you, is that he had a sexual interest in J.H. And from that evidence, a reasonable jury could conclude that he was predisposed to commit the crime and that the government did not induce him to commit the crime. Now as I mentioned, that text did not stand alone. So even if we look at the initial Facebook conversations with a real 17-year-old girl before any police contact, we can see evidence of predisposition from which a jury could reject the entrapment offense. In those initial Facebook messages, he called her beautiful and comments on her looks. He asked whether she has a boyfriend. He asked about her age. He asked what she was doing that evening. He tries to disarm her. He says, I'm not trying to flirt. I'm not trying to hit on you. I'm safe. I'm a Christian. You can background check me. And when it's clear that she has stopped responding and is done with the conversation, he tries to manipulate her emotionally, making her feel guilty for not continuing the conversation. All of that happens until almost 3 o'clock in the morning. From that evidence with the real girl before police contact, the jury could conclude that this was a man who was predisposed to commit this crime of enticing a young minor for sex. Now, the court and the jury could stop there, but it does not need to stop there. So I'd like to take a look at some of the early text messages after Agent Evans took over the case. Hood repeatedly tried to escalate the encounter. He tries to call. He suggests meeting in person. He asked for a selfie. He asked for video chat. The common thread between all of those is that these are ways for him to verify that the person he is talking to is, in fact, a minor. He introduces dating. He tells her, you need a new boyfriend. He asks her about her ideal date. Those are now things that are consistent with a platonic relationship with a 17-year-old girl. And third, he says, I have to be careful. You are 17. And he texts at 6.30 in the morning with no prompting from Agent Evans. You swear you are not setting me up. A reasonable jury concludes the only reason he's worried about her age, the only reason he would say he needs to be careful because she's 17, the only reason he's worried about being set up is because he knows that he intends to do something criminal with this underage girl. And finally, of course, he says, I love you and I want you. And those words, I want you, are simply inconsistent with the defendant's theory that he was looking for a platonic relationship with this 17-year-old girl. Now, as I understand the defendant's argument about the alleged inducement, that starts around the time that Agent Evans starts to ask Hood to sort of clarify his intent about what Mr. Hood wants. But this court has held that being receptive to a defendant's sexual advances is not entrapment. That's the Helton case. Taunting a defendant for being boring and pressing to know what was on the table is not entrapment. That's Hackworth. Pressing the defendant to tell me what you want is not entrapment as a matter of law. And that's the Martin case. Simply giving the defendant the opportunity to commit the crime is not entrapment as a matter of law, and that is all that Agent Evans did here. In fact, this case looks nothing like those cases where this court has, or the Supreme Court has, found entrapment as a matter of law. There was no lasting relationship, or at least the jury could find that there was no meaningful relationship as this unfolded over a couple of days. There were no repeated requests to engage in sexual activity. Mr. Hood certainly did not repeatedly refuse to engage in sexual activity, even if he was a little vague about his intentions. The government merely lets Hood know that J.H. was open for the possibility of sex, and giving that opportunity is not entrapment as a matter of law. In summation, I'd just like to point out that this is a fact-based question. The entrapment defense is a fact-based question that is most appropriate for the jury.  and I urge you to affirm that verdict. Thank you. Thank you. Well, I'd like to address the two cases that came from this circuit that are similar to this case that my friend has brought up, Helton and Hackworth. And, Mr., this case is actually, although Helton and Hackworth both appear to be superficially similar to this case, they are, in fact, different from this case in material and important ways. And Hackworth, for example, it was the defendant who initiated each chat session after they ended, and that the court found to be significant in looking at this contextual question, this fact-based question that was at play in that case, and that didn't happen here. In our brief, we outlined the four or five different times that the agent went back to fish for Mr. Hood when he wasn't responding quickly enough to bring him back into the conversation. And the very first time that the agent did that was after they had signed off for the night, and the agent said, wait, can I ask you something? And started a conversation that was designed to try to elicit a sexual conversation from Mr. Hood, and it was the beginning of the sort of heightened pressure to take the conversation where the agent wanted it to go. In Hackworth as well, there was no... frantic or emotional discussion between the parties. The entire conversation in Hackworth is set forth in the appellant's brief, and if you read it, you will see that it was really a kind of mean and crude and sarcastic conversation between two people. This conversation was different. The agent intentionally and very carefully said, love, you're sweet, you're nice, I like you, I have feelings for you, I care for you. And that's nothing like what happened in Hackworth. In Hackworth as well, it was the defendant who first suggested sex, whereas in this case, it was the agent who pressed the conversation to be about whether Mr. Hood wanted to have sex with her and made it clear that they had gained his trust enough to make him feel comfortable doing that. Helton is different as well. In Helton, the defendant was very quick to move the conversation to sex, and most crucially, the defendant's credibility was in question in Helton. And that's why it was a jury question, because there was a question of his credibility about whether he was actually willing to have sex with a 14-year-old. There's nothing like that in this case, because Mr. Hood didn't testify, there was never any question about his credibility. We have undisputed evidence from which the court can conclude that it was a patently clear absence of predisposition on his part. The other thing I'd like to say about Helton is that the government seems to try to draw a per se rule from Helton, Sherman, Jacobson, and McLernan, which is there has to be a long period of increasingly escalating pressure from the government in order for entrapment as a matter of law to hold. That's in tension with the Supreme Court's very first entrapment case, Sorrell's, where the entrapment happened in a single conversation in less than an hour and a half. So with that, I'd just ask the court to reverse the conviction and with instructions to dismiss the indictment. Thank you very much. Thank you very much, and the case is submitted.